**"O"**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| LUCIA GARCIA, | Case No. CV 05-7159-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for an award of Social Security Disability Insurance benefits and Supplemental Security Income benefits. 42 U.S.C. § 405(g). For the reasons set forth below, the Court reverses the administrative decision and remands this matter for an award of benefits.

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits on July 17, 2003, alleging disability due to arthritis, obesity, high blood pressure, depression and anxiety. (Administrative Record ("AR") at 48-50, 340-43). The

applications were denied initially and on reconsideration. A de novo hearing was held before Administrative Law Judge ("ALJ") Lauren Mathon on April 12, 2004.

At the time of the hearing, Plaintiff was 57 years old. She has a third grade education obtained in Spain, and cannot write, read, or understand English. At the hearing, she had a Spanish interpreter to assist her. Her most recent work was as an in-home caretaker for the elderly, which ended on August 14, 2002. She had previously worked as a seamstress, but that work ended when she had a stroke in 1989, causing a deterioration in her vision. She also has a history of obesity. At the time of the hearing, she was 62" tall and weighed 260 pounds.

In a decision dated July 27, 2004, the ALJ found that Ms. Garcia had the following severe impairments: high blood pressure; heart murmur; joint pain; chest pain; status post stroke and depression, none of which met or equaled one of those contained in the listings found at 20 C.F.R., Part 404, Subsection P, Appendix 1. (AR at 25). The ALJ further found that Ms. Garcia retained the residual functional capacity to perform the full range of unskilled medium work and that in light of her age, education, work background, and functional capacity, the medical-vocational guidelines[1] directed a finding of not disabled.[2] (AR at 24-30).

Ms. Garcia has a history of psychiatric problems. She tried to commit suicide in 1990 by ingesting a large amount of Halcion, a sleeping pill, and was hospitalized thereafter. (AR at 371-72, 378-

---

[1] 20 C.F.R., Part 404, Subsection P, Appendix 2, Rule 203.11.

[2] There was no vocational expert testimony at the hearing.

79). At that time, a mental status evaluation revealed a history of depression and it was reported that her husband had noticed a deterioration in her coping skills as well as "delusions." (AR at 103).

Ms. Garcia began regular psychiatric treatment with Amanecer Community Counseling in January 1996, at which time she was diagnosed with major depression, recurrent and severe, with psychotic features. She was prescribed Paxil for her symptoms, which included fatigue and lethargy. In August 1997, she was diagnosed with major depression, severe; obsessive compulsive disorder; and arthritis with obesity as aggravating factors. (AR at 199). She was assessed with a Global Assessment of Functioning (GAF) Scale score of 40, which is defined as showing a major impairment in several life areas, such as work or school, family relations, judgment, thinking, or mood. She was prescribed Prozac, Paxil, and Haldol. (AR at 199).

Ms. Garcia then had a five year gap in mental health treatment. According to her testimony, in August of 2000, she "got very ill in regard to [her] nerves]" and even tried to push one of her elderly clients down the stairs because she "felt like killing her" and "couldn't take it any more." After this incident, Ms. Garcia returned home, took "the medication [she] was taking for her nerves" and decided to quit her job because she thought she would otherwise end up in jail. (AR at 378-79).

On November 4, 2002, Ms. Garcia again presented to Amanecer, this time with auditory hallucination of the voice of her deceased father, as well as other complaints which included sadness and a dysphoric mood. (AR at 198). An evaluation by Tony Cheng, Licensed Clinical Social Worker, revealed tearfulness and anxiety, with other

"obsessive compulsive features." (AR at 198). She was recommended for therapy. (AR at 193).

She began seeing Dr. Raymond Yee, a psychiatrist at Amanecer, in November of 2002 for regular therapy and medical maintenance. (AR at 186-92). The initial evaluation revealed a maternal history of psychiatric illness, her mother having had a history of psychiatric hospitalizations in Spain. (AR at 378-79). The evaluation also revealed estrangement from her daughter, a recent divorce, and loss of her job. (AR at 192). The mental status exam revealed tearfulness, crying, a sad mood, continued auditory hallucinations and delusions, and fair cognition and memory. (AR at 192). Dr. Yee diagnosed major depression, recurrent, with psychotic features and assessed her GAF at 40. On December 2, 2002, Ms. Garcia reported insomnia and anxiety and claimed that she was "crazy like her mother." (AR at 191). Dr. Yee assessed her as "labile," meaning emotionally unstable with wide fluctuation. He continued treatment with Paxil and prescribed Neurontin. (AR at 191).

Over the next two years of treatment, Ms. Garcia's psychiatric condition continued to fluctuate. At times, her medicinal regimen worked effectively and she was stable. (AR at 186). At other times, the medicine did not control her condition, even when she was completely compliant in taking it. (AR at 186, 281-82).

For example, on January 13, 2003, she was very depressed and tearful, with severe insomnia and fatigue. Her prescriptions were continued. (AR at 187). On January 27, 2003, she reported "keeping thinking about the dead" and that "nights are bad." Her dosages of Paxil and Neurontin were increased. On February 24, 2003, she was still hearing her deceased father's voice calling her, she wasn't

sleeping at all, and the Ativan was not helping. (AR at 186). She was deemed compliant with her medications, but they were only "partially effective." She was diagnosed as labile and psychotic, and her medications were all renewed.

In March 2003, her condition had stabilized. (AR at 285). But by May 2003, she began crying and feeling depressed again, apparently because she had stopped taking her Paxil. Dr. Yee discussed the importance of remaining on the medication and Ms. Garcia again became fully compliant with her treatment. Through July 2003, she remained stable. However, in September 2003, despite being fully compliant with her medications, she presented as tearful and anxious and was diagnosed as labile.

In March 2004, Ms. Garcia's treatment plan was again characterized as only "partially effective," as Ms. Garcia was suffering from sad mood and anxiety, despite the medications. A new medication, Buspar, was added to her regimen. Throughout this time, Ms. Garcia had been attending group and individual therapy once or twice a week at Amanecer with therapists and clinical social workers. (AR at 288-302).

In a letter to the Social Security Administration, dated September 8, 2003, Dr. Yee confirmed his regular treatment of Ms. Garcia and stated that she meets the DSM-IV criteria for Major Depression, Recurrent, with Psychotic Features. (AR at 269). He stated that she has received ongoing psychiatric and psychological services at Amanecer's outpatient mental health clinic since November 4, 2002. He listed her current medications as Paxil, Zyprexa, Ativan and Neurotin. Dr. Yee then stated, "Ms. Garcia's psychological illness is characterized by depression and anxiety when she is not

stable on psychotropic medication.  Her illness makes Ms. Garcia prone to emotional decompensation.[3]  Due to these symptoms, Ms. Garcia is disabled and unable to work." (AR at 269). Dr. Yee reiterated these findings in an April 5, 2004 letter that reflected Ms. Garcia's updated medication regimen. (AR at 268).

The ALJ rejected the opinion of Dr. Yee, "due to its inconsistency with [Dr. Yee's] own records and the testimony of the claimant." (AR at 28).[4]  The ALJ interpreted Dr. Yee's letters to indicate that even though Ms. Garcia was stable when on her medications, she was nonetheless unable to work. (AR at 26). The ALJ concluded that Ms. Garcia could work if she took her medications. In support of this finding, the ALJ cited Ms. Garcia's testimony at the hearing that she does not have hallucinations when on her medications. The ALJ then found: "This evidence and claimant's ability to testify at [the] hearing would indicate that claimant retains the work related mental activities generally required by competitive, remunerative work including the abilities to: understand, carry out, and remember instructions; use judgement in making work-related decision[s]; respond appropriately to supervision, co-workers and work situations and deal with changes in a routine work setting." (AR at 27).

---

[3] In psychology, the term "decompensation" means the appearance or exacerbation of a mental disorder due to failure of defense mechanisms, or the inability to maintain defense mechanisms in response to stress, resulting in personality disturbance or psychological imbalance. *The American Heritage Stedman's Medical Dictionary*, 2nd Edition, 2004.

[4] The ALJ may have credited the opinion of a non-examining state agency psychiatrist who opined that although Ms. Garcia's depression was severe, it was not expected to last 12 months if she remained complaint medication. (AR at 226). However, the ALJ did not state this explicitly.

1 The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

The Court agrees with Plaintiff that the ALJ misinterpreted Dr. Yee's opinion and that the rejection of the doctor's opinion is not substantially supported. Dr. Yee stated that Ms. Garcia's psychological impairments are "characterized by depression and anxiety when she is not stable on psychotropic medication." This does not imply, as the ALJ inferred, that Ms. Garcia's condition is always stable when on medication. More accurately, when Ms. Garcia is indeed stable – as reflected intermittently in the treatment records – her stability is due to having achieved a balance in psychotropic medications that manages to keep her symptoms in check for a while. However, there are many notations in her treatment records indicating that even when compliant with her medication regimen, her condition is "labile" and she again experiences symptoms

including crying and hallucinations. (AR at 191-98, 186, 281-86). When she experiences these symptoms, Dr. Yee deems her medication regimen to be only "partially effective." (*Id*).

Moreover, the ALJ overlooked the last paragraph of Dr. Yee's letter. There, Dr. Yee states that Ms. Garcia's illness makes her prone to emotional decompensation and thus she is disabled and unable to work. In other words, Dr. Yee found that Ms. Garcia cannot work because, whatever stability she's achieved with medicine and therapy, it is precarious as she has an inability to maintain defense mechanisms in response to stress.

The opinions of treating physicians are ordinarily to be given greater weight than the opinions of other physicians. *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). A treating physician's opinion as to the nature and severity of an impairment must be given controlling weight if the opinion is well supported and not inconsistent with other substantial evidence. SSR 96-2p; *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). Even when the treating physician's opinion is contradicted by other medical evidence in the record, that opinion is entitled to deference unless there are specific and legitimate reasons, supported by substantial evidence in the record, for its rejection. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The opinion of a psychologist is given the same weight as that of a physician. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995). The Court finds that the alleged internal inconsistencies in Dr. Yee's opinion cited by the ALJ are not valid, and that they do not meet the Ninth Circuit standard under *Rollins* as specific and legitimate reasons, supported by substantial evidence

in the record, for rejecting Dr. Yee's opinion. *Rollins*, 261 F.3d at 856.

The other reason cited by the ALJ for his finding is that Ms. Garcia's "ability to testify as [the] hearing would indicate that [she] retains the work related mental activities generally required by competitive [] work." (AR at 27). The Court agrees with Plaintiff that this is also not a substantial reason for rejecting Dr. Yee's opinion or finding Plaintiff not disabled. The ALJ's personal observations of Ms. Garcia's comportment at the hearing cannot override the uncontested and well documented opinion of her treating physician that she is seriously ill. A claimant does not have to demonstrate a loss of contact with reality in order to be disabled due to a psychological impairment. All that is required is a showing that the medical condition would preclude the claimant from engaging in substantial gainful employment. Plaintiff has made this showing.

The Court finds that the ALJ improperly rejected the opinion of Plaintiff's treating psychiatrist and improperly relied on personal observations of Plaintiff in finding her not disabled. The treating physician's opinions as to the nature and severity of Ms. Garcia's mental impairments were well-supported and not inconsistent with other substantial evidence. The final decision of the Commissioner is therefore not supported by substantial evidence.

The decision whether to remand for further proceedings is within this Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("the decision of

9

whether to remand for further proceedings turns upon the likely utility of such proceedings"); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

Here, there are no outstanding issues that must be resolved before a determination of disability can be made because the record is fully developed and overwhelmingly support's the conclusion that Plaintiff is disabled under the Social Security Act. "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court] credit[s] that opinion 'as a matter of law.'" *Meraz v. Barnhart*, 300 F.Supp. 2d 935, 942 (C.D.Cal. 2004) citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citations omitted); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).

For these reasons, It is **ORDERED** that the decision is reversed and the matter is remanded for an award of benefits.[5]

Dated: June 26, 2006                         */s/ Marc L. Goldman*
                                             _____
                                             Marc L. Goldman
                                             United States Magistrate Judge

---

[5] Because the Court is reversing on this issue, it is unnecessary for the Court to reach Plaintiff's other claims of error.